IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 11-113 |
| v. | : | (Judge Kane) |
| BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU, and SUSAN OSAGIEDE | : | FILED HARRISBURG MAR 30 2011 MARY E. D'ANDREA, CLERK Per_____ DEPUTY CLERK |

INDICTMENT

COUNT 1
(Conspiracy to Commit Mail Fraud, Wire Fraud and Money Laundering)

A. Background

Beginning in or around April 2004 and continuing through November 2010, domestic and foreign based mass marketers, both known and unknown to the Grand Jury, instructed victims to send Western Union and MoneyGram money transfers to satisfy advance fee conditions associated with falsely promised lucrative financial awards and offers, or to purchase various products offered for sale via the internet. Some of the mass marketing schemes included the manufacture, distribution and negotiation of counterfeit checks. The mass marketers used fictitious names, titles, companies, and addresses when they communicated with victims, and instructed the victims to send the Western Union and MoneyGram money transfers payable to fictitious name payees. The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE**, each former Western Union and MoneyGram Agents, and other agents known and unknown to the Grand Jury, processed and cashed the victim money transfers in a manner which maintained the anonymity of the mass marketers, and concealed the control and ownership of the fraudulent proceeds. The defendants **BETTY AGHO, ITOHAN AGHO-**

**ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** kept a portion of the fraud induced proceeds as compensation for their role in the conspiracy.

As used in this Indictment, the term "mass marketer" or "mass marketers" refers to an individual, or group of individuals, who use one or more means of mass communication media, to include the mail, telephone and internet, to distribute fraudulent sweepstakes, loan, employment opportunity and other lucrative financial awards and offers.

The mass marketing schemes included, but were not limited to the following:

SWEEPSTAKES SCHEMES

- Advance fee sweepstakes schemes wherein purported "winners" were directed to pre-pay processing fees and taxes in order to collect their cash prizes. The Western Union and MoneyGram payees were falsely identified as representatives of public or private sweepstakes organizations or taxing authorities. As used in this Indictment, the term "winner" refers to an individual who received a fraudulent prize notification and counterfeit check.

LOAN SCHEMES

- Advance fee loan fraud schemes wherein purported successful loan applicants were directed to pay advance fees to purchase insurance or to place security deposits in order to receive guaranteed loan proceeds. The Western Union and MoneyGram payees were falsely identified as representatives of the purported lenders. As used in this Indictment, the term "borrower" refers to an individual who was falsely promised a loan.

EMPLOYMENT OPPORTUNITY SCHEMES

- Employment Opportunity schemes wherein job seekers were directed to cash checks and use the proceeds to complete purchases, Western Union and MoneyGram money transfers to evaluate retail stores, Western Union and MoneyGram. The victims, sometimes referred to as "secret shoppers", were directed to retain a portion of the cash proceeds as payment for their services. As used in this Indictment, the term "secret shopper" refers to an individual who was recruited via the mail to cash checks and send

Western Union and MoneyGram money transfers on behalf of purported quality control consultants.

PERSON IN NEED SCHEMES

- Person in Need schemes wherein mass marketers developed an on-line relationship with intended victims or posed as a relative, typically a grandchild, in order to induce the intended victims to send Western Union or MoneyGram money transfers for a false need or emergency.

INTERNET PURCHASE SCHEMES

- Internet purchase schemes wherein mass marketers posed as the sellers of large ticket items, in most instances at a lucrative price. The mass marketers directed the purchasers to send Western Union or MoneyGram money transfers as payment for the items. The merchandise was never delivered.

Domestic and foreign based mass marketers distributed the fraudulent prize notifications and employment opportunities accompanied by checks via Canada Post and the United States mail. The advance fee loan fraud offers were routinely distributed via the internet. Telemarketers falsely authenticated the prize notifications, employment opportunities, and loan offers. Telemarketers directed the recipients to cash the checks to fund the pre-payment of fees which were reportedly a condition of prize delivery, or to complete retail purchases and send Western Union and MoneyGram money transfers in order to evaluate the respective businesses pursuant to the employment opportunity schemes. The checks cashed by the purported "winners" and "secret shoppers", hereinafter victims, were counterfeit, and returned unpaid to the banks of first deposit. The banks of first deposit initiated collection procedures against the victims for the total value of the counterfeit checks. The advance fee loan schemes did not ordinarily include the delivery of a check to the intended victim. As a condition of loan issuance, loan fraud victims were instructed to use personal funds to send Western Union and MoneyGram money transfers to complete collateral and insurance payments. The prize notifications, employment opportunities and loan offers were fictitious and the claimed association with legitimate public and private sweepstakes or lottery organizations, customer service evaluation businesses and lenders was false.

As used in this Indictment, the term "complicit agent" describes a Western Union or MoneyGram agent who permitted mass marketers to cash fraud induced Western Union and MoneyGram money transfers payable to multiple fictitious names. The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE**, and other "complicit agents", entered false names and identification data into the Western Union and MoneyGram computer data bases to conceal the true identity of the mass marketers from the victims, law enforcement and regulatory agencies. The mass marketers and "complicit agents" used thousands of different payee names in order to avoid detection and the scrutiny of anti-money laundering protocols.

The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** converted the fraud induced Western Union and MoneyGram money transfers to cash or a combination of cash, money orders, checks, bank wires and money transfers on behalf of the co-conspirator mass marketers and money launderers. The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** and similarly complicit Western Union and MoneyGram Agents, known and unknown to the Grand Jury, entered false payee identification and biographical data into the Western Union and MoneyGram transactional data bases. In so doing, the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** concealed the identity of the fraudulent mass marketers and money launderers and the control and ownership of the fraudulent proceeds from the victims, Western Union, MoneyGram, United States Treasury and law enforcement officials.

At all times pertinent to this Indictment:

1. Western Union and MoneyGram were publicly traded global money transfer companies. The Western Union and MoneyGram networks consisted of over 500,000 Agents, sometimes referred to as outlets, worldwide. Typical Western Union and MoneyGram money transfers are sent among (to and from) family members and close acquaintances. The average dollar amount of a typical North American Western Union and MoneyGram money transfer approximates $400. The average dollar amount of a typical fraud induced money transfer cashed by a complicit agent

pursuant to mass marketing sweepstakes and secret shopper schemes approximates $2,000. Only a fraction, estimated between ten to twenty five percent, of the victims reported the fraud induced money transfers to Western Union and MoneyGram.

2. Western Union and MoneyGram money transfer senders were required to present cash and complete a handwritten application, known as a "To Send Money" (Western Union) or "Send" (MoneyGram) form at an authorized Western Union or MoneyGram Agent location. The senders were required to list the amount of the transfers, the names of the payees (receivers), the expected payout locations, and their own names, telephone numbers and addresses on the "To Send Money" and "Send" forms. The Western Union and MoneyGram Agents collected the money transfer amounts, plus money transfer fees from the senders, and entered the senders' biographical and identification data, along with the names of the intended payees into the Western Union and MoneyGram transactional data bases. Western Union assigned 10 digit Money Transfer Control Numbers (MTCNs) and MoneyGram assigned 8 digit Reference Numbers to the transactions.

3. Western Union and MoneyGram payees were required to physically enter authorized Western Union and MoneyGram Agent locations (outlets) and complete handwritten applications, known as a "To Receive Money" (Western Union) and "Receive" (MoneyGram) forms. The payees were directed to list their own addresses and telephone numbers, and the name, city and state of the senders and the expected money transfer amounts on the "To Receive Money" and "Receive" forms. It was optional for the payees to list the 10 digit MTCN and 8 digit Reference Numbers. The payees presented the completed "To Receive Money" and "Receive" forms to the Western Union and MoneyGram Agents. The Western Union and MoneyGram Agents were then required to query the Western Union or MoneyGram transactional data bases to determine whether the money transfers had been sent by the senders identified by the payees. For all money transfers in an amount equal to or greater than $1,000 (Western Union) or $900 (MoneyGram) the payees were required to present valid identification documents for examination by the Western Union and MoneyGram Agents. The Western Union and MoneyGram Agents were required to enter the payee names, addresses, telephone numbers, and identification document serial

numbers into the Western Union and MoneyGram transactional data bases.

4. Regardless of the expected city and state listed by MoneyGram and Western Union money transfers senders, the money transfers pertinent to this Indictment were converted to cash, checks, money orders, bank wires or re-transferrred in the Greater Newark, NJ and Brooklyn, New York Areas by the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE**. A substantial portion of those monies were re-transferred by the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE**, and others, to Canada and West Africa in the form of money transfers and bank wires. The defendants kept or shared an approximate 15% to 20% cut of the fraud induced money transfers for their role in the conspiracy.

5. During the period 2002 through 2005, **PRINCE EDOSA** and **SUSAN OSAGIEDE**, reported husband and wife, co-owned and operated two Western Union outlets known as A & M Communications. Western Union terminated A & M Communication's authorization to process Western Union money transfers at the request of its Security and Compliance Departments due in part to the high number of fraud induced money transfers processed at A & M Communications. **SUSAN OSAGIEDE** applied for and was granted authority to process MoneyGram money transfers in the name A & M Communications at three locations in Brooklyn, New York. Each outlet was reportedly co-owned by **SUSAN OSAGIEDE** and **PRINCE EDOSA**. **OSAGIEDE** and **EDOSA** were authorized to operate a fourth MoneyGram outlet in the name Gosa Links at 5010 Avenue D, Brooklyn, New York.

6. In or about June 2006, the defendant **BETTY AGHO**, at the request of **SUSAN OSAGIEDE**, applied for a Western Union outlet with co-defendant **PRINCE EDOSA** in the name Gosa Multiservices. **BETTY AGHO** falsely listed herself as the 50% owner of Gosa Multiservcies. **PRINCE EDOSA**, a previously terminated Western Union agent, falsely identified himself to Western Union as Kingsley Orji.

7. In or about December 2006, **BETTY AGHO** applied for and was awarded a Western Union Agency Agreement in the name Star Multiservices. In or about May 2007,

**BETTY AGHO** applied for and was awarded a MoneyGram agency agreement in the name Star Multiservices.

8. In or about April 2007, **SUSAN OSAGIEDE** reported to MoneyGram that she sold the Gosa Links operation to the defendant **ITOHAN AGHO – ALLEN**, and recommended to MoneyGram that they award an agency agreement to **AGHO – ALLEN**. During the period June 2004 through May 2007, 31 MoneyGram money transfers totaling $91,121 processed at Gosa Links were reported as fraud induced.   In or about June 2007, **ITOHAN AGHO – ALLEN** applied for and was awarded a MoneyGram agency agreement in the name Miracle Multi Link at 5010 Avenue D, Brooklyn.

9. In or about September 2007, the defendant **PRINCE EDOSA**, identifying himself as Kingsley Orji, advised Western Union that he obtained sole ownership of Gosa Multiservices. During the period May 2007 through January 2008, 30 money transfers, totaling $76,571, processed at Gosa Multiservices were reported by the senders as fraud induced. During the period May 2007 through October 2008, 55 Western Union money transfers, totaling $159,804, processed at Star Multiservices were reported by the senders as fraud induced. Western Union terminated the Gosa Multiservices (**PRINCE EDOSA** as Kingsley Orji) and Star Multiservices (**BETTY AGHO**) agency agreements when they learned of the agents' suspicious association with each other and former agent A & M Communications (**EDOSA** and **OSAGIEDE**), and their apparent complicity in consumer fraud and money laundering activity.

10. In or about February 2008, **KENNEDY ONAIWU**, identifying himself as the 100% owner of Kenizo Enterprises applied for MoneyGram and Western Union agency agreements. MoneyGram (February 25, 2008) and Western Union (March 4, 2008) awarded agency agreements to **KENNEDY ONAIWU**. During the period March 2008 through March 2009, MoneyGram senders reported that 122 money transfers, totaling $369,417, paid at Kenizo Enterprises were induced by mass marketing fraud activity. During that same period, Western Union senders reported that 37 money transfers, totaling $85,229, paid at Kenizo Enterprises were induced by mass marketing fraud activity. MoneyGram and Western Union terminated **ONAIWU's** authority to process money transfers.

11. In or about June 2008, the defendant **PRINCE EDOSA**, then a MoneyGram agent and the reported co-owner of A & M Communications with **SUSAN OSAGIEDE**, applied for and was awarded a MoneyGram agency agreement in the name Kingsley Orji trading as Kings Multiservices. During the period July 29, 2008 through February 23, 2009, 84 money transfers, totaling $254,371, processed at Kings Multiservices were reported by the senders as fraud induced.

12. In or about October 2008, **ITOHAN AGHO - ALLEN** caused the submission of a MoneyGram application for agency agreement in the name of her sister, purportedly trading as Dez Multi Service. The application was denied, and **AGHO – ALLEN** and an unindicted co-conspirator re-applied in the name of her sister-in-law, the wife of co-defendant **KENNEDY ONAIWU**, and in the name of the unindicted co-conspirator's brother. MoneyGram awarded an agency agreement, but terminated same within four (4) months when MoneyGram learned that the agent processed a materially excessive percentage of reported fraud induced money transfers.

13. During the period June 2008 through March 2009, 243 MoneyGram money transfers totaling $773,477, processed at A & M Communications were reported by the senders as fraud induced. MoneyGram terminated the A & M Communications' agency agreement on or about May 14, 2009 due to **SUSAN OSAGIEDE** and **PRINCE EDOSA's** apparent complicity in consumer fraud and money laundering activity.

14. During the period June 2007 through March 2009, 58 MoneyGram money transfers totaling $154,641 processed at Star Multiservices (**BETTY AGHO**) were reported by the senders as fraud induced. MoneyGram terminated the Star Multiservices agency agreement due to **BETTY AGHO's** apparent complicity in consumer fraud and money laundering activity.

15. During the period July 2007 through March 2009, 362 money transfers, totaling $1,277,391, processed at Miracle Multi Link (**ITOHAN AGHO – ALLEN**) were reported by the senders as fraud induced. On or about May 8, 2009, MoneyGram terminated the Miracle Multi Link agency agreement due to **AGHO – ALLEN's** apparent

complicity in consumer fraud and money laundering activity.

16. In or about December 2009, **ITOHAN AGHO – ALLEN**, identifying herself as **ITOHAN ALLEN**, the owner of Miracle Multi Link, South Ozone Park, NY, applied for and was awarded a Western Union agency agreement. Pursuant to the application process, the defendant **AGHO – ALLEN** falsely reported to Western Union that the defendant had never been terminated by a Money Service Business. Western Union Compliance Analysts determined that the consumer biographical data entered at Miracle Multi Link was suspect, and that three (3) of Miracle Multi Link's forty-five (45) August and September 2010 transactions were reported as fraud induced. Western Union further determined that ten (10) additional transactions processed during that same time period appeared fraud induced. Western Union terminated the Miracle Multi Link agreement during November 2010.

B. **The Conspiracy and Its Objects**

17. Beginning in approximately April 2004, and continuing through approximately November 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** and various co-conspirators, both known and unknown to the Grand Jury, did knowingly and willfully conspire and agree together and with each other, to commit various offenses against the United States; that is:

   a) To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises through the use of the United States mail and private couriers, in violation of Title 18, United States Code, Section 1341, Mail Fraud, and;

   b) To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio and television communication in interstate and foreign commerce, any

writings, signals, pictures and sounds in violation of Title 18, United States Code, Section 1343, Wire Fraud.

c) To conduct a financial transaction affecting interstate commerce and foreign commerce, which involved the proceeds of specified unlawful activity, to wit, Mail Fraud in violation of 18 U.S.C. Section 1341, and Wire Fraud in violation of 18 U.S.C. Section 1343, with the intent to promote the carrying on of that specified unlawful activity, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting the financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18 U.S.C. Section 1956, Laundering of Monetary Instruments.

## C. Manner and Means of the Conspiracy and Scheme and Artifice to Defraud

18. It was part of the conspiracy and scheme and artifice to defraud that the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** and various co-conspirators, both known and unknown to the Grand Jury, agreed to obtain money and property; to wit, in excess of $3 million from hundreds of victims through a scheme in which the co-conspirator mass marketers falsely promised lucrative financial awards and other items of value. It was also part of the conspiracy and scheme and artifice to defraud that the victims were told that in order to receive the cash prizes, compensation, loans or various other financial awards they were required to make advance payments, which the co-conspirators characterized as "taxes", "Customs' duties", "insurance", "security deposits" or "processing fees" dependent on the nature of the underlying scheme. It was also part of the conspiracy and scheme and artifice to defraud that in some instances the co-conspirators delivered counterfeit checks payable to the victims to fund the advance payments. The co-conspirators directed the victims to cash the checks and wire the cash proceeds via Western Union and MoneyGram to fictitious name payees. The

mass marketers falsely represented to the victims that the Western Union and MoneyGram payees were bona-fide representatives of a business enterprise or governmental agency dependent on the nature of the underlying scheme. The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** and other co-conspirator Western Union and MoneyGram Agents, known and unknown to the Grand Jury, permitted the unindicted co-conspirator mass marketers to cash money transfers in multiple fictitious names, and simultaneously entered false addresses, telephone numbers and identification document serial numbers into the Western Union and MoneyGram transactional databases. In so doing, the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU** and **SUSAN OSAGIEDE,** and the co-conspirators concealed the true identity of the co-conspirator mass marketers, and eventual ownership and control of the fraudulent proceeds. After the victims completed the Western Union and MoneyGram money transfers, the co-conspirators failed to distribute any of the promised cash prizes, compensation, loans, financial awards or products, and failed to refund the purported pre-paid "taxes", "Customs' duties", "processing fees", "collateral payments", "security deposits" and "insurance premiums". The counterfeit checks deposited and cashed by the victims were returned unpaid, and the victims were responsible to reimburse the banks or entities which cashed the checks. In order to effect this conspiracy and scheme and artifice to defraud, the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** and the various co-conspirators, both known and unknown to the United States Attorney, aided and abetted each other and with the knowledge and consent of all of the parties, engaged in the following fraudulent conduct:

a) The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU** and **SUSAN OSAGIEDE,** and others, converted the fraud induced Western Union and MoneyGram money transfers to a combination of cash, money orders, checks, bank wires and money transfers.

b) The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU, SUSAN OSAGIEDE** and other co-conspirators

distributed the fraud proceeds in a manner which concealed the true control and ownership of those proceeds.

c) The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** processed the fraud induced Western Union and MoneyGram money transfers without the presence of a true Western Union or MoneyGram payee at the agent locations.

d) The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** processed numerous Western Union and MoneyGram money transfers payable to multiple fictitious name payees on behalf of a single co-conspirator thereby not only maintaining the anonymity of the co-conspirator, but also evading the reporting requirements of the Bank Secrecy Act.

e) The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** entered false addresses, telephone numbers and identification document serial numbers into the Western Union and MoneyGram transactional data-bases incident to these transactions thereby maintaining the anonymity of the true cash recipient, and creating the illusion that a bona-fide payee physically entered the outlet.

f) The defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE** did not require that the co-conspirators complete Western Union and MoneyGram "Receive" forms, or endorse Western Union and MoneyGram receipts and checks issued incident to the transactions.

### D. Overt Acts

19. On on about June 6, 2006, at the request of **SUSAN OSAGIEDE, BETTY AGHO** co-applied for a Western Union agency agreement with **PRINCE EDOSA** in the name Gosa Multiservices. **PRINCE EDOSA** falsely identified himself as Kingsley Orji on the

Western Union application and agreement.

20. In or about April 2007, the defendant **SUSAN OSAGIEDE** recommended to a MoneyGram Territory Manager that MoneyGram award an agency agreement to **ITOHAN AGHO – ALLEN**.

21. On or about April 6, 2007, **ITOHAN AGHO - ALLEN**, identifying herself as the 100% owner of Miracle Multi Link, 5010 Avenue D, Brooklyn, applied for a MoneyGram agency agreement.

22. In or about May 2007, the defendant **SUSAN OSAGIEDE** recommended to a MoneyGram Territory Manager that MoneyGram award an agency agreement to **BETTY AGHO**.

23. In or about May 2007, **BETTY AGHO**, identifying herself as the 100% owner of Star Multiservices, applied for a MoneyGram agency agreement.

24. On or about July 25, 2007, via the United States mails, J. B. received a fraudulent prize notification along with a check to help pre-pay taxes and processing fees necessary to collect J. B.'s cash prize.

25. On or about July 25, 2007, J. B. sent a $2,980 Western Union money transfer from Hazleton, PA as directed by a purported sweepstakes official.

26. On or about July 25, 2007, J.B.'s $2,980 Western Union money transfer was processed at Star Multiservices (**BETTY AGHO**) in Brooklyn, NY.

27. On or about September 20, 2007, via the United States mails, S. M. received a fraudulent prize notification.

28. On or about September 28, 2007, S. M. sent a $2,985 Western Union money transfer payable to Stephanie Wallace from Hummelstown, PA as directed by a purported sweepstakes official.

29. On or about September 29, 2007, S. M.'s $2,985 Western Union money transfer was processed at Gosa Multiservices (**PRINCE EDOSA** aka Kingsley Orji) in Brooklyn, NY.

30. On or about May 20, 2008, via the United States mails, Y. T. received a fraudulent prize notification.

31. On or about May 30, 2008, Y. T. sent a $3,600 Western Union money transfer payable to Cindy Johnson from York, PA as directed by a purported sweepstakes official.

32. On or about May 30, 2008, Y. T.'s $3,600 Western Union money transfer was processed at Star Multiservices (**BETTY AGHO**) in Brooklyn, NY.

33. On or about September 29, 2008, **BETTY AGHO** made a split $14,700 cash deposit to the Star Multiservices (**BETTY AGHO**) account and the account of an unindicted co-conspirator MoneyGram agent at Bank of America.

34. On or about October 10, 2008, via the United States mail, J. H. received a letter accompanied by a check. The letter offered J. H. employment as a "Secret Shopper".

35. On or about October 15, 2008, as directed, J. H. sent a $1,588 MoneyGram money transfer payable to Andrea Johnson from East Stroudsburg, PA.

36. On or about October 15, 2008, J. H.'s $1,588 MoneyGram money transfer was processed at Kings Multiservices (**PRINCE EDOSA** aka Kingsley Orji) in Brooklyn, NY.

37. On or about October 16, 2008, H.M. sent a $2,500 MoneyGram money transfer payable to Jonathan Futerman from Mansfield, PA to purchase an automobile offered for sale on-line.

38. On or about October 16, 2008, H. M.'s $2,500 MoneyGram money transfer was processed at Kenizo Enterprises (**KENNEDY ONAIWU**) in Newark, New Jersey.

39. On or about October 16, 2008, P. B. sent a $7,000 MoneyGram money transfer payable to David Norris from York, PA to purchase an automobile offered for sale on-line.

40. On or about October 17, 2008, P. B.'s $7,000 MoneyGram money transfer was processed at Miracle Multi Link (**ITOHAN AGHO – ALLEN**) in Brooklyn, New York.

41. On or about October 26, 2008, **BETTY AGHO** made a split $10,554 cash deposit to the Star Multiservices (**BETTY AGHO**) and Kenizo Enterprises (**KENNEDY ONAIWU**) accounts at Bank of America.

42. On or about November 20, 2008, via the United States mail, N. R., received a letter accompanied by a check. The letter offered N.R. employment as a "Secret Shopper".

43. On or about November 25, 2008, as directed, N. R. sent a $2,220 MoneyGram money transfer payable to Katherine Williams from Montoursville, PA.

44. On November 25, 2008, N.R.'s $2,220 MoneyGram money transfer was processed at Miracle Multi Link (**ITOHAN AGHO-ALLEN**) in Brooklyn, NY.

45. On or about January 31, 2009, A. R. sent two MoneyGram money transfers, one in the amount of $2,450 payable to Harry Puller, and one in the amount of $2,150 payable to Joseph Henley from York, PA to purchase an automobile offered for sale on-line.

46. On or about January 31, 2009, A. R.'s $2,450 and $2,150 MoneyGram money transfers were processed at A & M Communications (**PRINCE EDOSA** and **SUSAN OSAGIEDE**) in Brooklyn, New York.

47. On or about October 5, 2009, at the request of **ITOHAN AGHO – ALLEN**, an unindicted co-conspirator Western Union agent in New Jersey processed fraud induced money transfers, and used the proceeds to send a $5,500 Western Union money transfer to Nigeria. At **AGHO – ALLEN's** direction, the unindicted co-conspirator agent entered false data into the Western Union computer to conceal the

source, control and ownership of the fraud proceeds.

48. On or about December 23, 2009, ITOHAN AGHO – ALLEN, as ITOHAN ALLEN, a purported New Jersey resident, signed a Western Union agency agreement trading as Miracle Multi Link, South Ozone Park, New York. AGHO – ALLEN falsely represented to Western Union that no money service business had ever terminated an agency agreement with AGHO – ALLEN or Miracle Multi Link.

In violation of Title 18, United States Code, Section 371, Conspiracy to Commit Section 1341 (Mail Fraud), Section 1343 (Wire Fraud), and Section 1956 (Money Laundering)

## COUNTS 2 - 5
## (Mail Fraud)

The Grand Jury Further Charges:

1. The information and allegations set forth in Count 1 of this Indictment are specifically incorporated herein.

2. Between April 2004 and November 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU and SUSAN OSAGIEDE,** and other conspirators, known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury, did devise a scheme or artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, as described in Count 1 of this Indictment, and for the purpose of executing such scheme or artifice, on or about the dates set forth below, did cause any matter or thing whatever to be deposited in the U.S. Mail and delivered according to the direction thereon, as described below:

| Count | Date | City, State | Receiver | Content |
|---|---|---|---|---|
| 2 | 7/25/2007 | Hazleton, PA | J. B. | Prize Notification |
| 3 | 9/20/2007 | Hummelstown, PA | S. M. | Prize Notification |
| 4 | 5/20/2008 | York, PA | Y. T. | Prize Notification |
| 5 | 11/20/2008 | Duboistown, PA | N. R. | Secret Shopper Offer |

All in violation of Title 18, United States Code, Sections 2 and 1341.

## COUNTS 6-17
### (Wire Fraud)

The Grand Jury Further Charges:

1. The information and allegations set forth in Count 1 of this Indictment are specifically incorporated herein.

2. Between April, 2004 and November, 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **BETTY AGHO, ITOHAN AGHO-ALLEN, PRINCE EDOSA, KENNEDY ONAIWU** and **SUSAN OSAGIEDE,** and other conspirators, known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury, did devise a scheme or artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, as described in Count 1 of this Indictment, and, on or about the dates set forth below, did cause to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, any writing, sign, signal, picture or sound for the purpose of executing such scheme or artifice, as described below:

17

| Count | Date | Sender | Send Location | Amount | Payee | Outlet | State |
|---|---|---|---|---|---|---|---|
| 6 | 06/21/2007 | L. A. | BLOOMSBURG, PA | $3,100 | ALEX CORTEZ | STAR MS | NY |
| 7 | 07/25/2007 | J. B. | HAZLETON, PA | $2,890 | LINDA BEBMON | STAR MS | NY |
| 8 | 07/27/2007 | J. B. | HAZLETON, PA | $1,000 | LINDA BOBMON | STAR MS | NY |
| 9 | 09/28/2007 | S. M. | HUMMELSTOWN, PA | $2,985 | STEPHANIE WALLACE | GOSA MS | NY |
| 10 | 05/30/2008 | Y. T. | YORK, PA | $3,600 | CINDY JOHNSON | STAR MS | NY |
| 11 | 10/10/2008 | L. S. | CHAMBERSBURG, PA | $1,880 | REBECCA DURWELL | KENIZO ENT. | NJ |
| 12 | 10/15/2008 | J. H. | E STROUDSBURG, PA | $1,588 | ANDREA JOHNSON | KINGS MS | NY |
| 13 | 10/16/2008 | P. B. | YORK, PA | $7,000 | DAVID NORRIS | MIRACLE | NY |
| 14 | 10/27/2008 | L. F. | LEBANON, PA | $2,000 | BRENDA WITT | STAR MS | NY |
| 15 | 11/25/2008 | N. R. | MONTOURSVILLE, PA | $2,220 | KATHERINE WILLIAMS | MIRACLE | NY |
| 16 | 1/30/2009 | A. R. | YORK, PA | $2,450 | HARRY PULLER | A & M COMM. | NY |
| 17 | 1/30/2009 | A. R. | YORK, PA | $2,150 | JOESPH HENLEY | A & M COMM. | NY |

All in violation of Title 18, United States Code, Sections 2 and 1343.



PETER J. SMITH  
United States Attorney